**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| FABIAN HUIZAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-CV-90-PPS |
| | ) | |
| EQUIFAX INFORMATION SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Fabian Huizar purchased an SUV using a loan obtained from Horizon Bank.

Huizar eventually fell behind on his car payments, so Horizon repossessed his SUV. But

a state court judge found Horizon botched the repossession, which resulted in Huizar

obtaining a judgment absolving him of any responsibility to pay his delinquent car bill.

Following the judgment, Huizar began to dispute the Horizon debt as it appeared in his

consumer reports prepared by the "big three" consumer reporting agencies—Experian,

Equifax, and TransUnion.

After eight dispute letters to Equifax, none of which resolved to his satisfaction

the alleged inaccuracy in his credit reports, Huizar turned to the courts. He filed this

lawsuit against Equifax under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681

*et seq.*, seeking to recover damages for what he believes is inaccurate reporting of the

Horizon Bank debt in his credit reports. After the close of discovery, Huizar and

Equifax filed cross motions for summary judgment. [DE 143; DE 147]. Because there

remain genuine issues of material fact about the accuracy of Equifax's reporting of

Huizar's credit history, the reasonableness of its investigation, and Huizar's damages, the motions for summary judgment are **DENIED**.

### Factual Background

*Huizar's Car Loan and the Tippecanoe Circuit Court Proceedings*

On January 12, 2018, Fabian Huizar used a loan serviced by Horizon Bank to purchase a 2015 Ford Explorer for $22,767.93 for his wife (then his fiancé).[1] [DE 161 at ¶25.] By July 2018, Huizar and his wife had missed several monthly payments towards the Horizon loan. [*Id.* at ¶27.] Because of these missed payments, Horizon employed a repo company to repossess Huizar's car on July 24, 2018. [*Id.* at ¶29.] After the repossession, Huizar called Horizon to negotiate the missed payments and retrieve his car. [DE 159-1 at 2.] Instead, Horizon told Huizar it had accelerated his loan, which required him to repay the loan in full before Horizon would return the car. [*Id.*] A couple months later, Horizon sold Huizar's car at a private auction for $16,000, which Horizon claimed left a deficiency balance of $7,679.08 on Huizar's loan. [*Id.*] Thereafter, Horizon demanded Huizar pay the deficiency balance and Huizar responded by demanding the return of his vehicle. [DE 161 at ¶32; DE 148-4 at 10.]

Huizar sued Horizon on November 22, 2018, in Tippecanoe Circuit Court in Indiana concerning the circumstances of Horizon's repossession of Huizar's car. [DE 159-1 at 2.] Huizar prevailed at a February 2020 bench trial, and in a July 7, 2020, order, the Circuit Court held Huizar had "defaulted on the loan and Horizon was entitled to

---

[1] Equifax's Statement of Material Facts lists the purchase price as $22,797.93, and Huizar did not dispute this number in his response. But the state court records referenced by Equifax and Huizar list the purchase price as $22,767.93, so I use that number here. [*See* DE 148-4 at 8.]

accelerate the loan" but that Horizon's repossession breached the peace. [*Id.* at 3; DE 148-4 at 10–11.] As a result, the Circuit Court ruled in Huizar's favor on his consumer protection claims and awarded damages. [*Id.* at 12–19.] Importantly, as another form of relief, the Circuit Court "eliminate[d] [Horizon's] deficiency judgment" and therefore reduced Huizar's awarded damages by the $7,679.08 deficiency judgment amount. [*Id.* at 16–17.] The judge also denied Horizon's counterclaim for breach of contract and deficiency judgment. [*Id.* at 17.] Horizon received the Circuit Court order sometime before August 6, 2020. [DE 159-1 at 23.]

The Circuit Court later entered a Final Appealable Order on September 21, 2020, that modified the July 7, 2020, Order to dismiss one of Huizar's claims and reduce his total awarded damages. [DE 148-13 at 128–131.] The Final Appealable Order did not amend, and in fact restated, the conclusions of law in the July 7, 2020, Order that eliminated Horizon's deficiency judgment and reduced Huizar's damages by that sum. [*Id.* at 129.] Horizon appealed, and on October 13, 2021, the Indiana Court of Appeals affirmed all but a portion of the Circuit Court's Final Appealable Order concerning attorney's fees awarded to Huizar. [DE 161 at ¶¶47–48; *see also Bank v. Huizar*, 178 N.E.3d 326 (Ind. Ct. App. 2021).]

Huizar sent Equifax eight letters that disputed the information on his Equifax credit reports:

### *July 2020 Dispute ("First Dispute")*

On July 14, 2020, Equifax received a letter from Huizar dated July 8, 2020, that disputed the Horizon loan information reported on his credit report. [DE 159-1 at 3; DE

161 at ¶19.] Huizar wrote his report showed a balance of $7,594 owed to Horizon but he did "not owe anything to Horizon." [DE 148-4 at 2.] He also wrote he "disputed this account, but my credit report doesn't show that." [*Id.*] Huizar's mailing included a medical bill from Indiana University Health, his drivers' license, and the July 7, 2020, Order. [*Id.* at 5–19.]

Equifax used an Automated Credit Dispute Verification ("ACDV") form to communicate Huizar's dispute to Horizon. [DE 159-1 at 4.] Horizon's August 6, 2020, response said Huizar's disputed information was accurate because the Horizon account was an "[u]npaid balance reported as a loss by credit grantor (charge-off)." [DE 148-5 at 2.] Horizon's ACDV response noted a current balance of $7,641 for the Horizon account. [*Id.*] Equifax sent the results of its reinvestigation to Huizar on August 7, 2020. [DE 148-6.] Equifax reported late payment history from May to August 2018, that the account had been charged off for all months since September 2018, and an updated charge off amount of $0. [*Id.* at 5.] The fields for balance amount and amount past due were blank. [*Id.*] The report noted: "Consumer Disputes This Account Information." [*Id.*]

*November 2020 Dispute ("Second Dispute")*

On November 30, 2020, Equifax received Huizar's second dispute letter, dated November 24, 2020, in which he said his credit report showed he now owed $7,829 to Horizon. [DE 161 at 23; DE 148-7 at 2.] Huizar reiterated his claim he doesn't "owe anything to Horizon" and noted his balance "somehow went up since last time." [*Id.*] Huizar wrote: "If you look at court records, you'll see I don't owe this", and he included a scan of his drivers' license. [*Id.* at 2, 4.]

Horizon's December 10, 2020, ACDV response to Equifax listed Huizar's account status as "[u]npaid balance reported as a loss by credit grantor (charge-off)" and updated the balance past due and current balance figures from $7,829 to $7,875. [DE 148-8 at 2.] As with the first ACDV form, the second ACDV form again noted "[a]ccount information disputed by consumer" but added for the first time the notation "[c]ontact credit grantor for additional information." [*Id.*] Horizon updated the original charge off amount from $22,558 to $22,942. [*Id.*] Equifax sent the results of its reinvestigation to Huizar on December 10, 2020. [DE 148-9.] Equifax again reported late payment history from May to August 2018 and that the account had been charged off for all months since September 2018. [*Id.* at 5.] The report noted: "Consumer Disputes This Account Information." [*Id.*] The report listed a balance amount and amount past due of $7,875, but the field for charge off amount was blank. [*Id.*]

*December 2020 Dispute ("Third Dispute")*

On December 22, 2020, Equifax received Huizar's third dispute letter, dated December 15, 2020, in which he said his credit report showed he owed $7,875 to Horizon. [DE 161 at 26–27; DE 148-10 at 2.] Huizar noted changes in his December 12, 2020, credit report compared to his November 24, 2020, report, including the removal of language that his Horizon account was closed and charged off. [*Id.*] Huizar again included a scan of his driver's license. [*Id.* at 6.]

Horizon's January 14, 2021, ACDV response to Equifax again listed Huizar's account status as "[u]npaid balance reported as a loss by credit grantor (charge-off)" and the balance past due as $7,875. [DE 148-11 at 2.] Horizon adjusted the original

charge off figure back to $22,558. [*Id.*] This third ACDV form again noted "[a]ccount information disputed by consumer" and "[c]ontact credit grantor for additional information." [*Id.*] Equifax sent the results of its reinvestigation to Huizar on January 14, 2021. [DE 148-12.] Equifax reported late payment history from May to August 2018 and that the account had been charged off for all months since September 2018. [*Id.* at 5.] The report noted: "Consumer Disputes This Account Information." [*Id.*] The report continued to list a balance amount and amount past due of $7,875 and added the charge off amount as $22,558. [*Id.*]

>
 *January 2021 Dispute ("Fourth Dispute")*

On January 23, 2021, Equifax received Huizar's fourth dispute letter, dated January 16, 2021, in which he said his credit report showed he owed $7,875 to Horizon. [DE 161 at 31; DE 148-13 at 2.] Huizar noted his Horizon account was listed as closed but had no listed closure date [*Id.*] This time, Huizar included over 100 pages, including his driver's license, government publications, and four pages of the September 21, 2020, Order. [*Id.* at 5–136.]

Horizon's February 5, 2021, ACDV response to Equifax continued to list Huizar's account status as "[u]npaid balance reported as a loss by credit grantor (charge-off)" and the balance past due as $7,875. [DE 148-14 at 2.] This fourth ACDV form again noted "[a]ccount information disputed by consumer" and "[c]ontact credit grantor for additional information." [*Id.*] Equifax sent the results of its reinvestigation to Huizar on February 6, 2021. [DE 148-15.] Equifax reported late payment history from May to August 2018 and that the account had been charged off for all months since September

2018. [*Id.* at 5.] The report continued to list a balance amount and amount past due as $7,875 but removed the charge off amount figure. [*Id.*] The report noted: "Consumer Disputes This Account Information." [*Id.*]

### *November 2021 Dispute ("Fifth Dispute")*

On November 21, 2021, Equifax received Huizar's fifth dispute letter, dated November 15, 2021, in which he said his credit report showed he owed $8,388 to Horizon. [DE 161 at 36; DE 148-16 at 2.] Huizar said he checked his credit report again because he received an email about a late payment on a Horizon account. [*Id.*] Huizar cited the Indiana Court of Appeals proceedings and attached over 200 pages of records, including his driver's license, government publications, and four pages of the October 13, 2021, Indiana Court of Appeals opinion. [*Id.* at 8–221.]

Horizon's December 7, 2021, ACDV response to Equifax listed Huizar's account status as "[u]npaid balance reported as a loss by credit grantor (charge-off)" and adjusted to $0 the current balance and balance past due figures which had been $8,388. [DE 148-17 at 2.] This fifth ACDV form again noted "[a]ccount information disputed by consumer" and "[c]ontact credit grantor for additional information." [*Id.*] Equifax sent the results of its reinvestigation to Huizar on December 7, 2021. [DE 148-18.] Equifax reported late payment history from May to August 2018 and that the account had been charged off for all months since September 2018. [*Id.* at 5.] The report listed a $0 balance, $0 amount past due, and no charge off amount for the Horizon account. [*Id.*] The report noted: "Consumer Disputes This Account Information." [*Id.*]

### *December 2021 Dispute ("Sixth Dispute")*

On December 29, 2021, Equifax received Huizar's sixth dispute letter, dated December 18, 2021, in which he took issue with the Horizon account reported as "charge-off" since September 2018. [DE 161 at 41; DE 148-19 at 2.] Huizar noted that his credit score increased more than 50 points after Equifax removed the balance owed and amount past due figures from an earlier credit report. [*Id.*] Huizar attached a news article and his Indiana Court of Appeals opinion. [*Id.* at 7–39.] Equifax concedes it did not "immediately reinvestigate [Huizar's] Sixth Dispute upon receipt due to a vendor scanning error." [DE 161 at 42.] At some point in 2022, Equifax says it realized it did not process Huizar's Sixth Dispute. [*Id.*] On September 16, 2022, Equifax sent Huizar the results of its reinvestigation of his dispute. [DE 148-20.] Equifax noted that it had deleted Huizar's Horizon account from his credit file. [*Id.* at 4.]

### April 2022 Dispute ("Seventh Dispute")

On April 15, 2022, Equifax received Huizar's seventh dispute letter, dated April 11, 2022, in which he said Equifax had relisted the Horizon account on his credit report with $8,572 as past due. [DE 161 at 43; DE 148-21 at 2.] Huizar included an undated screenshot of a credit report that showed an account listed as charged off for each month beginning in September 2018 through March 2022, which he said was inaccurate. [*Id.* at 2–3.] Huizar again included his Indiana Court of Appeals opinion and other documents. [*Id.* at 5–57.]

Horizon's April 27, 2022, ACDV response to Equifax listed Huizar's account status as "[u]npaid balance reported as a loss by credit grantor (charge-off)" and noted previous current balance and amount past due figures of $8,615. [DE 148-22 at 2.] The

ACDV form adjusted the current balance and balance past due figures to $0. [*Id.*] The

ACDV form again noted "[a]ccount information disputed by consumer" and "[c]ontact

credit grantor for additional information." [*Id.*] Equifax sent the results of its

reinvestigation to Huizar on April 28, 2022. [DE 148-23.] Equifax noted that Horizon

"verified to our company that the prior paying history is being reported correctly" but

that the Horizon account had "been updated to report as paid in full." [*Id.* at 4–5.]

Equifax reported late payment history from May to August 2018 and that the account

had been charged off for all months since September 2018. [*Id.* at 5.] The report noted:

"Consumer Disputes This Account Information." [*Id.*] The report listed a $0 balance, $0

amount past due, and no charge off amount for the account. [*Id.*]

<u>July 2022 Dispute ("Eighth Dispute")</u>

On July 18, 2022, Equifax received Huizar's eighth dispute letter, dated July 11,

2022, in which he said Equifax had relisted the Horizon account on his credit report

with $8,756 past due. [DE 161 at 46–47; DE 148-24 at 2–3.] Huizar included an undated

screenshot of a credit report that showed the Horizon account listed as "closed" and as

charged off for each month beginning in September 2018. [*Id.* at 2.] April 2022 is listed

as having no available data. [*Id.*] Huizar again included his Indiana Court of Appeals

opinion and other documents. [*Id.* at 5–82.]

Horizon's August 4, 2022, ACDV response to Equifax adjusted Huizar's account

status from "[u]npaid balance reported as a loss by credit grantor (charge-off)" to

"[p]aid or closed account/zero balance." [DE 148-25 at 2.] The ACDV form noted a

prior current balance and balance past due of $8,756 that Horizon adjusted to $0. [*Id.*]

The ACDV form again noted "[a]ccount information disputed by consumer" [*Id.*] Equifax sent the results of its reinvestigation to Huizar on August 4, 2022. [DE 148-26.] Equifax noted that it had made several updates to Huizar's report, including updating the balance amount to $0. [*Id.* at 4–5.] Equifax reported late payment history from May to August 2018 and that the account had been charged off for all months since September 2018. [*Id.* at 5.] The report noted: "Consumer Disputes This Account Information." [*Id.*] The report listed a $0 balance for the account and no amount past due or charge off amount. [*Id.*] The report also listed (for the first time) the account status as "Pays As Agreed." [*Id.*]

## Standard of Review

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citation omitted). On a motion for summary judgment, all facts and reasonable inferences are construed in a light most favorable to the non-moving party. *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 873 (7th Cir. 2025).

## Discussion

Congress enacted the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. § 1681 *et seq.*, "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S.

47, 52 (2007). As collectors and distributors of consumer credit information, Consumer

Reporting Agencies ("CRAs") are important players within the FCRA's statutory

scheme. The FCRA defines CRAs as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). There is no dispute that Equifax is a CRA.

Huizar alleges Equifax violated three provisions of the FCRA: (1) 15 U.S.C. §

1681e(b); (2) 15 U.S.C. § 1681i(a); and (3) 15 U.S.C. § 1681i(c). I will address Huizar's

claims under § 1681i(a) and § 1681e(b) together because those theories overlap in many

ways. I will then turn to Huizar's claim under § 1681i(c) concerning whether Equifax

included a statement of dispute on Huizar's credit reports.

## I.    Accuracy of Huizar's Consumer Report

First, "[a] threshold requirement for claims under both [§ 1681e(b) and § 1681i(a)]

is that there must be an inaccuracy in the consumer's credit report." *Chuluunbat v.*

*Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021); *Walton v. BMO Harris Bank N.A.*,

761 Fed.Appx. 589, 591 (7th Cir. 2019) ("Although the reasonableness of a credit

reporting agency's procedures under § 1681e(b) is not typically a summary-judgment

question, [a CRA] cannot be liable as a threshold matter if it did not report inaccurate

information."). Though left undefined by the FCRA, the Seventh Circuit defines

"accuracy" to encompass "both truth and completeness—a report that is misleading or

materially incomplete is inaccurate." *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 809 (7th Cir. 2023). Indeed, "[a] credit report is inaccurate under § 1681e(b) and § 1681i(a) if it omits accurate information that could reasonably be expected to adversely affect a consumer's creditworthiness." *Id.* at 812. And as is important here, "the information needs to be factually inaccurate, not legally inaccurate." *Thorton v. Experian Info. Sols., Inc.*, No. 24 CV 624, 2025 WL 1951743, at *3 (N.D. Ill. July 16, 2025) (citing *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020)).

Huizar alleges his Equifax credit reports contained two categories of inaccuracies. In the first category, Huizar argues certain Equifax credit reports contained inaccurate balance and amount past due figures for his Horizon account. Second, Huizar argues Equifax's reporting of the Horizon account as "charged off" and with a listed charge off amount was inaccurate or at least misleading. Equifax argues its reports accurately reported Huizar's late payment history and the fact that Horizon had written off the debt (reflected by the "charged off" notation). According to Equifax, federal regulations *obligated* Horizon to report Huizar's account as charged off once his payments were 120 days past due. In his response, Huizar says he "is not suing over late payment history." [DE 160 at 9.]

Confoundingly, Huizar has provided the Court with only one copy of a credit report he says was inaccurate. Instead, the Parties' designated evidence primarily consists of Huizar's dispute letters (which purportedly cite and sometimes include screenshots of his credit reports), Horizon's ACDV responses, and Equifax's responses to his disputes.

I begin with Huizar's alleged inaccuracies concerning the balance and amount past due figures for his Horizon account. Huizar says his July 2020, November 2020, January 2021, and April 2022 disputes highlighted these inaccurate balance amount and balance past due figures on his credit reports. Concerning his July 2020 dispute, Horizon's ACDV response lists a current balance of $7,641 and balance past due of $55, [DE 148-5 at 2], but Equifax's response omitted this information [DE 148-6 at 5]. Both the ACDV forms and Equifax's responses to his November 2020, December 2020 (Huizar omits mention of this dispute), and January 2021 reports all listed his balance amount and balance past due as $7,875 for his Horizon account. [DE 148-9 at 5; DE 148-12 at 5; DE 148-15 at 5.] Huizar also points to an April 11, 2022, credit report (purportedly from Equifax) that shows a balance and amount past due of $8,615 for his Horizon account. [DE 143-21 at 23.]

Equifax argues that Huizar's claims of inaccurate balance and balance past due figures fail because he asked Equifax to resolve a legal dispute instead of a factual one. In response, Huizar argues the state court proceedings resolved the question of whether he owed a balance on his Horizon account as a matter of law. CRAs are statutorily obligated to investigate and ensure protection against "factual inaccuracies" but addressing "legal inaccuracies" is "outside the competency of the consumer reporting agencies." *Chuluunbat*, 4 F.4th at 567. "The paradigmatic example of a legal dispute is when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law." *Id.* "In contrast, examples of factual inaccuracies include the amount a consumer owes, and what day a consumer opened an

account or incurred a payment." *Id.* at 568.

At first glance, Huizar's argument that Equifax's listing of a balance amount and balance past due on his credit reports was inaccurate because of the state court orders seems a "paradigmatic" example of a legal dispute because he asks Equifax to determine that his debt was invalid as a matter of law. But *Chuluunbat* recognized a key carve out: "[a] legal question may also be resolved as a matter of fact if a tribunal—such as a court or arbitrator—has adjudicated the matter." *Id.* Let's suppose Huizar had never taken Horizon to court, and he filed a dispute letter with Equifax that he didn't owe Horizon any money because Horizon had breached the peace during the repossession. That would be an unresolved *legal* question that Equifax would have no duty to report on. By contrast, once a legal dispute is resolved—as in this case—with a finding the debt is no longer valid, that becomes a factual matter that Equifax must report accurately.

Equifax argues the state court orders never resolved whether Huizar owed money to Horizon or ordered Horizon to zero-out the balance of Huizar's account. Instead, Equifax argues the state court orders merely offset Huizar's total damages. Equifax's arguments ignore the state court orders' holding that "eliminate[d] the deficiency judgment." [DE 148-4 at 17.] In any event, Equifax cannot simply throw its hands up when it receives a court order. *See Chaitoff*, 79 F.4th at 815 (noting "CRAs can read and understand legal documents"). Huizar did exactly what the Seventh Circuit advised in *Chuluunbat*: "If the plaintiffs presented court judgments to the consumer reporting agencies showing that the legal ownership of their debts have been

14

adjudicated, the investigation may have been factual in nature." 4 F.4th at 569.

Equifax's reliance on *Herrell v. Chase Bank USA, N.A.*, 218 F.Supp.3d 788 (E.D. Wis. 2016) is unpersuasive. For starters, *Herrell* predates *Chuluunbat* and *Chaitoff* and commented how at that time "[t]he Seventh Circuit has yet to establish its own interpretation of the FCRA's standards for accuracy and completeness." *Id.* at 793. But most importantly, the plaintiff in *Herrell* had no state court order that determined Chase could not collect on his debt. Instead, the plaintiff crafted a Wisconsin statute of limitations argument, but the court determined that both the choice of state law and plaintiff's interpretation of Wisconsin law were unsettled legal (as opposed to factual) questions. *Id.*

Although Huizar previously owed money to Horizon, beginning on July 7, 2020, the state court orders "eliminate[d]" his obligation to make future payments towards that debt. In other words, *Huizar no longer owed money to Horizon* after that date. Under these circumstances, the Court finds there exists a triable issue of fact as to whether the Equifax reports that continued to report a balance *currently* due on the Horizon account after the July 7, 2020, Order created a materially misleading impression about Huizar's payment and credit history. Huizar has not provided sufficient evidence to establish this theory of inaccuracy as a matter of law at this juncture.

In addition, Huizar argues that Equifax's reporting of his Horizon account as "charged off" was inaccurate and the amount of reported charge off ($22,558) did not account for the $16,000 Horizon recovered from the auction of his car. Based on the Court's own review of the record, Equifax's January 14, 2021, response to Huizar's

December 2020 dispute listed a charge off amount of $22,558 for his Horizon account. [DE 148-12 at 5.] Moreover, it was not until August 2022 that Equifax reported Huizar's Horizon account as "Pays As Agreed." [DE 148-26 at 5.] Equifax eventually deleted the Huizar account from his report entirely in September 2022. [DE 148-20 at 4.]

Equifax's reporting of Huizar's account as "charged off" and with a charge off amount presents a different question of accuracy than Equifax's reporting of Huizar's balance amount and balance past due because charge off reporting does not necessarily reflect a *current* debt. Instead, "charge off" refers to "a creditor's decision '[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." *Borowski v. Ally Fin. Inc.*, Case No. 22-cv-0394-bhl, 2023 WL 4207784, at *3 (E.D. Wis. June 27, 2023) (citing Black's Law Dictionary (11th ed. 2019)). After all, "a credit report is intended to include more than a person's current debt; it also includes bill-payment history and other information that a reasonable lender might consider important in deciding whether and at what rate to extend credit." *Herrell*, 218 F.Supp.3d at 792. Indeed, Huizar does not dispute that he missed *previous* payments. [DE 161 at 11.]

Huizar argues Equifax's reporting of his Horizon loan as charged off and the amount of the charge off were both inaccurate. These theories of inaccuracy present different factual questions. On the one hand, I find that Equifax has satisfied its burden on summary judgment to establish that its mere fact of reporting the Horizon account as charged off (setting aside the amount and when) is not inaccurate under the FCRA. It is undisputed that Horizon did in fact charge off Huizar's loan. Huizar's last payment

16

occurred in June 2018, and he concedes he did not repay in full Horizon's loan.

Moreover, Horizon's sale of his car at an auction did not recover the full amount of the

loan to Huizar. And unlike the state court orders that "eliminate[d]" his deficiency

owed to Horizon, Huizar points to no language (nor could he) in the state court orders

that held as a matter of law Horizon could not report the account as charged off.

On the other hand, there is a triable question of fact on the accuracy of Equifax's

reporting of the date of the Horizon account charge off. Huizar does not contest

Equifax's contention that the Uniform Retail Credit Classification and Account

Management Policy requires financial institutions to classify as "charged off" closed-

end loans that are 120 days past due. 65 FR 36903-01. But when those 120 days tolled is

contested. Huizar points to Equifax's reinvestigation reports that show his last payment

to Horizon occurred in June 2018 to argue his Horizon account should not have been

reported as charged off until October 2018. [DE 161 at 11–12.] Equifax points to Huizar's

concession that he began to miss payments beginning in April 2018, so it was accurate

to report the account as charged off beginning in September 2018. [*Id.*] This dispute is a

question for trial, as is whether it could reasonably be expected to have impacted

Huizar's creditworthiness.

Finally, the Parties have presented a triable question on the accuracy of Equifax's

reporting of a charge off amount on Huizar's credit reports. Equifax reported a $22,558

charge off amount on its January 14, 2021, reinvestigation response to Huizar's dispute.

[DE 148-12 at 5.] Huizar says this figure does not account for the approximately $16,000

Horizon recovered in the sale of his vehicle at a private auction on September 6, 2018.

[DE 159-1 at ¶4.] Equifax fails to provide a fulsome response on this point. One can imagine how a charge off amount of over $22,000 on a credit report instead of approximately $7,000 to $8,000 could negatively impact Huizar's credit score. But Huizar's briefing on this point falls short to conclusively establish the point. This will be another question for trial.

## II.    Reasonableness of Equifax's Conduct Under § 1681i(a) and § 1681e(b)

After establishing an inaccuracy, "a CRA's liability under both § 1681e(b) and § 1681i(a) turns on whether a CRA acted reasonably." *Chaitoff*, 79 F.4th at 816. Section 1681e(b) of the FCRA requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Section 1681i requires consumer reporting agencies to "conduct a reasonable reinvestigation" to determine the accuracy of the disputed information. 15 U.S.C. § 1681i(a)(1)(A).

While both claims require evaluation of the reasonableness of the CRA's conduct, they differ in scope. The Seventh Circuit explained that "reasonable procedures under § 1681e(b) are not proof of a reasonable *reinvestigation*." *Chaitoff*, 79 F.4th at 817 (emphasis added). This makes sense given § 1681i(a)'s purpose as an avenue to dispute purportedly incorrect information that cleared initial screening and ended up on a consumer's report. Thus, the Seventh Circuit recognizes that "§ 1681i(a)'s reinvestigation requirement mandates a more thorough investigation than § 1681e(b)." *Id*. at 818 (citation omitted).

Huizar's dispute largely focuses on Equifax's reinvestigation process under §

1681i(a), so I'll begin with that claim. But to be clear, Huizar's complaint about Equifax's handling of the state court order and its use of the ACDV process undergird his claims of both an unreasonable reinvestigation under § 1681i(a) and a procedure ill designed to assure maximum possible accuracy under § 1681e(b). As such, my discussion of each section of the statute will be related.

### a. Reasonableness of Equifax's Reinvestigation (15 U.S.C. § 1681i(a))

The FCRA provides a process for consumers to notify a CRA, such as Equifax, that they dispute the accuracy or completeness of their consumer report. As mentioned, the CRA then must conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate," 15 U.S.C. § 1681i(a)(1)(A), including by considering "all relevant information submitted by the consumer." *Id.* § 1681i(a)(4). The cost benefit analysis for the reasonableness of a CRA's reinvestigation is different because a CRA that receives notice of a dispute can "target its resources in a more efficient manner and conduct a more thorough investigation." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286–87 (7th Cir. 1994). Thus, while the "parameters of a reasonable investigation will often depend on the circumstances of a particular dispute, it is clear that a reasonable reinvestigation must mean more than simply including public documents in a consumer report or making only a cursory investigation into the reliability of information that is reported to potential creditors." *Chaitoff*, 79 F.4th at 818 (citation omitted).

Here, Huizar disputed the information contained in the Horizon tradeline of his Equifax consumer report on eight different occasions between 2020 and 2022. Recall that

on seven of those occasions (excluding the December 2021 dispute which Equifax says it did not immediately reinvestigate because of a "vendor scanning error" [DE 148 at 14]) Equifax engaged the ACDV process to reinvestigate the disputes. What does this actually mean? Celestina Gobin, a Manager in Equifax's Legal and Litigation Department, helped to explain. She stated that when Equifax is notified that a consumer believes information in their credit file is inaccurate Equifax will initiate its reinvestigation process. [DE 148-3, Ex. A, Gobin Decl. ¶14.] As part of this process, Equifax will first consider and review all relevant information provided by the consumer to properly identify the consumer and the items that are believed to be inaccurate, along with the nature of the inaccuracy. [*Id*. at ¶16.] Gobin stated that if the consumer provides supporting documentation with the dispute, an Equifax agent will review the documentation to determine whether the supporting documents are sufficient to delete or update the account as requested by the consumer, or whether an internal policy allows Equifax to make the requested update. [*Id*. at ¶¶17–18.] Gobin said Equifax's internal policy does not permit civil judgments to be used to make immediate updates to a consumer's file without further investigation. [*Id*. at ¶21.]

So, was Equifax's reinvestigation process reasonable in this case? Recall that Huizar provided Equifax with the Tippecanoe Circuit Court Order with his first dispute. [DE 148-4 at 8-18.] Huizar asserts that "[a]ll Equifax had to do was read the Judgment to determine that Mr. Huizar owed nothing and the credit reporting was inaccurate." [DE 144 at 12.] Viewing the evidence of Equifax's handling of the court order in a light most favorable to Equifax, there is a genuine question as to whether

Equifax should have taken action to modify the information provided by Horizon upon receiving the court order.

A quick review of the order shows that it's not entirely clear how Huizar's debt to Horizon should have been reported after the judgment in Huizar's favor. The "Findings of Fact" section of the order acknowledges that Huizar and his wife (then fiancé) fell behind on their car payments. [DE 148-4 at 8–9.] The "Conclusions of Law" section of the original July 7, 2020, Order states that "Huizar defaulted on the loan and Horizon was entitled to accelerate the loan." [*Id.* at 10.] Conversely, the order also states that "Horizon failed to act in a commercially reasonable manner during the collection process and . . . . [a]s result, the Court hereby restrains Horizon from collecting a deficiency judgment." [*Id.* at 16.] The order makes it clear that Huizar never paid the $7,679.08 he owed on the SUV, but it also makes it clear that he no longer was required to. [*Id.*] In other words, the debt was extinguished.

The question of how this should be reported in a consumer report presents a difficult conundrum. On the one hand, obtaining a favorable judgment doesn't make a delinquent borrower automatically creditworthy. Indeed, there's no dispute that Huizar repeatedly *failed to pay his bills.* That seems like something a would-be credit provider might want to know about Huizar. On the other hand, a consumer's credit report should not reflect an amount owed when the consumer—by virtue of a judgment—no longer in fact owes the money.

All of this is to say that reasonable minds could disagree as to whether the judgment was enough that Equifax should have changed its reporting, and that is

21

enough to raise a genuine issue of material fact. *Ellison v. United States Postal Serv.*, 84 F.4th 750, 755 (7th Cir. 2023) ("A genuine issue of material fact exists when, based on the evidence, a jury could find for the non-moving party."); *Brock v. City of Belleville*, Case No. 17-cv-218-JPG-SCW, 2018 WL 2320511, at *1 (S.D. Ill. May 22, 2018) (explaining that a genuine issue of material fact exists where a fair-minded jury could return a verdict for the nonmoving party on the evidence presented.).

Moving on to Equifax's ACDV process, Gobin explains that if the supporting documentation from the consumer is not sufficient to delete or update the account, Equifax then contacts the data furnisher—Horizon Bank in this case—through an ACDV form sent through an online platform called E-OSCAR. [DE 148-3 at ¶¶22–25.] The purpose of the ACDV form is to request that the data furnisher investigate and verify or update the account. [*Id.* at ¶22.] Presented with a judgment that, arguably, makes it unclear whether the information provided by Horizon should be deleted or changed, Equifax moved forward with its ACDV process.

Huizar argues that Equifax's ACDV process constituted an unreasonable reinvestigation because Equifax did nothing more than parrot back whatever Horizon included in its ACDV forms. [DE 144 at 11.] As I've stated, the judgment made clear that Huizar was no longer on the hook to pay Horizon, but it didn't make clear that Horizon's reporting was inaccurate such that it should have been deleted or changed. In that situation, it seems reasonable to check with Horizon and see what their investigation turns up. However, Huizar disputed the Horizon tradeline in his consumer report on *eight different occasions* between 2020-2022 and every single time

Equifax did nothing but engage in the same ACDV process. As one court put it, the ACDV process is not *per se* reasonable in every circumstance. *Dulworth v. Experian Info. Sols. Inc.*, 1:22-cv-00469-JMS-MJD, 2024 WL 2319958, at *16 (S.D. Ind. May 22, 2024)

This is one of those cases. A reasonable juror could conclude that Equifax's reflexive reliance on the ACDV process is precisely the type of "cursory investigation" that has been deemed impermissible by the Seventh Circuit. *Chaitoff*, 79 F.4th at 818 (citation omitted). This is especially true in the face of the Tippecanoe Circuit Court Order showing that Huizar no longer owed the debt. As the Seventh Circuit noted, "it is disputable whether [the CRA]'s reliance on an ACDV response that conflicted with other documents in its possession amounted to a reasonable reinvestigation." *Id.* at 821; *see also*, *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 946 (11th Cir. 2021).

While, as pointed out by Equifax, the ACDV process has been found reasonable in some instances, a reasonable reinvestigation under § 1681i(a) requires more of a CRA than "merely parroting information." *Moran v. Embark Card Servs., LLC*, No. 25 CV 6017, 2025 WL 2803261, at *4 (N.D. Ill. Oct. 2, 2025) (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)). Parroting information from Horizon is exactly what Huizar claims Equifax did in response to each of his disputes.

To support his position that a reasonable reinvestigation did not take place, Huizar points to deposition testimony from Melvin Cerdas, a customer service representative in Equifax's dispute department. [DE 146 at 5-8]. The Court fails to see how much of the Cerdas testimony quoted by Huizar is relevant to the reasonableness of Equifax's reinvestigation. Cerdas said he was involved in Equifax's processing of one

of Huizar's disputes, but he does not recall which dispute, what he did, when it occurred, or what he reviewed. [Pltfs. Ex. 109 at 49–50.] Huizar instead seems to cite Cerdas' testimony to paint a picture of the reasonableness of Equifax's reinvestigation efforts generally, not necessarily with respect to its efforts to reinvestigate Huizar's disputes.

Cerdas said he did not know what a judgment or court order were and that no one had provided him any training at Equifax to interpret legal documents. [*Id.* at 134.] Cerdas also testified that dispute agents were prohibited from conducting additional research and could only make dispute determinations based on the information the consumer provided. [*Id.* at 133.] These statements, though they raise questions, are not dispositive on the reasonableness of Equifax's reinvestigation process. Cerdas' testimony concerning Equifax's reinvestigation process is muddy at best. In fact, after a series of questions concerning data furnishers Cerdas said "I think you have the wrong guy. I think that part of the business is handled by a different department." [*Id.* at 31.]

Huizar has not presented anywhere near sufficient evidence to succeed on summary judgment in establishing as a matter of law that Equifax's reinvestigation process is unreasonable. Even assuming that the ACDV process led to a consumer report that contained an inaccuracy, that fact alone does not mean that the procedures in place are unreasonable. *Denan*, 959 F.3d at 294 ("[T]he FCRA does not require unfailing accuracy from consumer reporting agencies."); *Henson*, 29 F.3d at 284 ("A credit reporting agency is not liable under the FCRA if it followed 'reasonable procedures to assure maximum possible accuracy,' but nonetheless reported inaccurate

information in the consumer's credit report."). Whether it was reasonable for Equifax to rely completely on information from Horizon in the face of numerous disputes and a court order remains a genuine issue of material fact.

Nothing in *Denan*, a case relied on by Equifax, mandates a different result. In *Denan*, consumers who borrowed from Indian tribes at interest rates prohibited by state usury laws contended that their credit reports were inaccurate because they reported the debts even though the debts were (in their view) uncollectible since they violated state law. 959 F.3d at 292–93. In *Denan*, unlike in our case, no court had answered the question as to whether the loans were invalid. Indeed, that's what makes *Denan* cut against Equifax's position. As the Seventh Circuit noted in that case: "[i]f a court had ruled the loans invalid and Trans Union had continued to report it as a valid debt, then plaintiffs would have grounds for a potential FCRA claim." *Id.* at 296 (citation omitted, cleaned up). That describes exactly what happened to Huizar; essentially, the state court in this case ruled that Horizon's loans were no longer valid. So, far from supporting Equifax, *Denan* props up Huizar's argument.

In sum, a reasonable jury could conclude that a procedure other than the ACDV process continually used by Equifax could have uncovered an inaccuracy in the Horizon tradeline. While neither party has definitively shown that Equifax's repeated use of the ACDV process was an unreasonable reinvestigation of the disputes as a matter of law, they have raised it as a genuine issue of material fact which should be decided at trial.

**b.  Reasonableness of Procedures to Assure Maximum Possible Accuracy**

**(15 U.S.C. § 1681e(b))**

"The reasonableness of a reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). The reasonableness of a CRA's procedures does not turn solely on whether a consumer's report contains an inaccuracy. Indeed, "a mistake does not render [the CRA's] procedures unreasonable." *Id.* at 972. CRA's are permitted to rely upon information "received from a source it reasonably believes is reputable . . . unless the agency receives notice of systemic problems with its procedures." *Id.* Given the volume of credit information and disputes CRAs process daily, the Seventh Circuit recognizes that "[w]hether a CRA's procedures are reasonable turns, predictably, on balancing the costs of a marginal return to accuracy against the potential harm to consumers from declining to incur those costs." *Chaitoff*, 79 F.4th at 817.

In its brief in support of its motion for summary judgement, Equifax first describes its policies and procedures concerning the formation of its relationship with furnishers. Equifax says it accepts credit information only from sources that it has determined to be reasonably reliable. Equifax makes this determination based on its own investigation of the source, the source's reputation in the community, and Equifax's longstanding business relationships with the source. Moreover, Equifax requires furnishers such as Horizon to sign subscriber agreements certifying that they will provide Equifax with accurate data and will follow applicable laws, including the FCRA.

Huizar offers scant response to Equifax's arguments concerning the reasonableness of the procedures it employed to establish its relationship with Horizon. Huizar first notes that the subscriber agreement Equifax references has not been presented to the Court. He also argues that evidence of any such subscriber agreement is not conclusive on the question of the reasonableness of Huizar's procedures to maintain maximum possible accuracy. These bare claims do little to counter Equifax's arguments concerning the reasonableness of the procedures it uses to establish relationships with furnishers.

As Equifax explains, Horizon Bank is a legitimate financial institution which Equifax had no reason to suspect was providing it with inaccurate reporting. *See Sarver*, 390 F.3d at 972 (explaining that requiring CRAs to engage in background research on information furnished by financial institutions would balloon the costs of their services, which in turn would be passed to consumers). Huizar points to no evidence suggesting that, prior to his first dispute, Equifax had reason to doubt Horizon's reporting. Indeed, "the § 1681e(b) inquiry concerns the steps the CRA takes *before* consumers dispute the accuracy or completeness of the report; the matter of the CRA's reasonableness in responding *after* a consumer has pointed out an inaccuracy is considered under the 'reasonable reinvestigation' provision." *Young v. Experian Info. Sols., Inc.*, 776 F. Supp. 3d 721, 739 (N.D. Ill. 2025) (emphasis in original).

Given Horizon's demonstrated reliability, it was reasonable for Equifax to trust that Horizon's *original* information was complete and accurate. *Sarver*, 390 F.3d at 972 (finding a CRA's procedures were not unreasonable unless the agency has reason to

believe a furnisher's information is unreliable). However, once Equifax was put on notice by way of Huizar's first dispute (and the Tippecanoe Circuit Court Order) that there was reason to believe that Horizon's reporting was unreliable, it is unclear whether there were reasonable procedures in place to ensure the maximum possible accuracy of Huizar's file. *See Chaitoff*, 79 F.4th at 817 ("Whether a CRA's procedures are reasonable turns, predictably, on balancing the costs of a marginal return to accuracy against the potential harm to consumers from declining to incur those costs.").

As Huizar states, his initial dispute of the Horizon tradeline "put Equifax on notice that Horizon was not a reliable source, as the Judgment provided to it directly contradicted the information Horizon supplied to Equifax." [DE 144 at 3]. And, as revealed during the deposition of Equifax employee Cerdas, there was potentially more Equifax could have done to ensure maximum possible accuracy. Potential procedures to ensure maximum possible accuracy include conducting outside research or requiring additional documentation from furnishers. [Pltfs. Ex. 109 at 29–31.] The Court once again notes the limited value of Cerdas' testimony in conclusively establishing that Equifax's procedures to ensure maximum possible accuracy after it receives notice of a potential error with a furnisher's data were either reasonable or unreasonable. There remains a genuine issue of material fact as to whether Equifax has in place reasonable procedures to assure maximum possible accuracy of the information in a consumer's file.

For these reasons, summary judgment on this point in not warranted in favor of Huizar or Equifax. *See, e.g.*, *McClelland v. Experian Info. Sols., Inc.*, No. 04 C 5686, 2006

WL 2191973, at *3 (N.D. Ill. July 28, 2006) (explaining that in most cases, the reasonableness of a CRA's procedures is a question for the jury); *Quinn v. Experian Sols.*, No. 02 C 5908, 2004 WL 609357, at *2 (N.D. Ill. Mar. 24, 2004) ("In the vast majority of cases, reasonable procedures should be determined by a jury.").

## III.   Huizar's Section 1681i(c) Claim

In addition to his § 1681i(a) and § 1681e(b) claims, Huizar seeks summary judgment on a § 1681i(c) claim. I discussed above the requirement that CRA's reinvestigate consumer disputes. If a CRA's reinvestigation does not resolve the dispute, a consumer may then "file a brief statement setting forth the nature of the dispute." 15 U.S.C. § 1681i(b). If such a statement of dispute is filed, and "unless there is reasonable grounds to believe that it is frivolous or irrelevant", the CRA "*shall*, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof." 15 U.S.C. § 1681i(c) (emphasis added). Only Huizar moves for summary judgment on this claim, though Equifax says this is because Huizar first briefed this claim in his motion for partial summary judgment.

To establish that Equifax violated 15 U.S.C. § 1681i(c), Huizar must show: "(1) he disputed inaccurate information contained in his credit file; (2) Equifax's reinvestigation did not resolve his dispute; (3) he filed a statement of dispute with Equifax upon completion of the reinvestigation; and (4) the statement he filed was not included in subsequent credit reports released by Equifax." *Quinn*, 2004 WL 609357 at *7.

Huizar has not advanced sufficient undisputed facts to establish he is entitled to

judgment on his § 1681i(c) claim as a matter of law. Huizar argues Equifax "never added a proper statement of [his] dispute to his credit file." [DE 144 at 19.] This underbaked argument is unsupported in two key respects. First, Huizar fails to point the Court to any statement within his dispute letters that he says either was not included or was not accurately summarized by Equifax in subsequent credit reports. And while there are "no magic words a consumer must incant to request the inclusion of a dispute statement", *Chaitoff*, 79 F.4th at 820, Huizar's briefing does not identify *any* language in his dispute letters that he says requested Equifax to add a § 1681i(c) dispute statement to his credit report. I won't go hunting for such language in the massive record in this case nor will I make Huizar's argument for him. *See, e.g.*, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Second, Huizar provides no explanation for what information his credit report omits (his "proper statement") that he requested Equifax include. In support of his argument, Huizar blankly points to Exhibit 80 to his motion, which is an April 11, 2022, credit report. [DE 143-21 at 21–23.] Huizar provides no explanation of the statement of dispute this credit report purportedly lacks. In fact, it is not even clear to the Court whether this credit report is an Equifax report or the report of some other CRA. Taking all reasonable inferences in Equifax's favor as I must, *Waukegan Potawatomi Casino, LLC*, 128 F.4th at 873, Huizar has failed to present evidence to prevail on his § 1681i(c) claim on summary judgment.

## IV.    Willfulness, Negligence, and Damages

If all else fails, Equifax tells me it is entitled to summary judgment because there is no proof that Huizar was damaged as a result of the inaccurate credit reporting. As I have done here, the Seventh Circuit, following the Supreme Court's lead in *Safeco*, permits courts to first answer the "antecedent question of whether a violation [of the FCRA] occurred" before analyzing a defendant's mental state. *See Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1195 (7th Cir. 2021). Having found Huizar presented facts that create triable issues as to the accuracy of his consumer reports and the reasonableness of Equifax's procedures, I now turn to the question of Equifax's mental state. Huizar alleges both negligent (actionable under 15 U.S.C. § 1681o) and willful (actionable under 15 U.S.C. § 1681n) violations of the FCRA. Equifax argues Huizar has failed to present evidence of damages to support either theory, which warrants summary judgment on Huizar's FCRA claims.

To prove a negligent violation of the FCRA, Huizar must establish "actual damages." 15 U.S.C. § 1681o(a)(1). "Actual damages require a 'causal connection' between the statutory violation and the harm suffered by the plaintiff." *Persinger*, 20 F.4th at 1194 (citation omitted). These "actual damages" may take the form of pecuniary harms (such as "lost income or out-of-pocket expenses caused by denials of credit, housing, or insurance") or nonpecuniary harms (such as "reputational damage and emotional distress"). *Id.* Nonpecuniary harms must be described in "reasonable detail." *Id.* To prevail on its motion for summary judgment as to Huizar's negligence claims, Equifax must show that there is no genuine dispute as to whether Huizar suffered actual damages because of Equifax's conduct. *Bagby v. Experian Info. Sols., Inc.*, 162 F.

App'x 600, 603-04 (7th Cir. 2006).

Not surprisingly, a willful violation is treated differently under the FCRA. "A willful violation is one committed with actual knowledge or reckless disregard for the FCRA's requirements." *Persinger*, 20 F.4th at 1195 (citing *Safeco*, 551 U.S. at 57). A company acts with reckless disregard for the FCRA if its actions were (1) "a violation under a reasonable reading of the statute's terms," and (2) the company "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. This is an objective standard. *Id.* at 68–69.

Equifax sorts Huizar's alleged damages into three categories: (1) denial of a mortgage with Panorama Mortgage Group LLC in March 2022: (2) the cost of mailing letters to Equifax; and (3) emotional distress. The first two categories of damages are pecuniary in nature while Huizar's allegation of emotional distress is nonpecuniary.

Huizar applied for several mortgages with Panorama Home Mortgage (also known as Alterra Home Loans). [DE 159-1 at 30.] The Parties' arguments focus on three such applications. In its motion for summary judgment, Equifax points to Huizar's March 2022 mortgage application with Panorama and September 2023 mortgage application with Flanagan State Bank. [DE 161 at ¶¶125, 147.] To evaluate Huizar's mortgage application, Panorama and Flanagan obtained "tri-merge" reports from third-party companies that compiled Huizar's credit information from Equifax, Experian, and TransUnion. To qualify for a conventional loan, Huizar's median credit score needed to be above 620. [*Id.* at ¶136.] To qualify for a Federal Housing Administration ("FHA") loan, Huizar's median credit score needed to be at least 580. [*Id.*]

For his March 2022 application, Panorama obtained a March 31, 2022, tri-merge report from Xactus. [DE 148-35.] The Xactus report listed Huizar's credit scores from Equifax as 621, from Experian as 615, and from TransUnion as 595. [*Id.* at 2.] The Xactus report contained several negative items, including two mortgage accounts and two other credit accounts that had histories of delinquent payments. [*Id.* at 3–4.] Including the Horizon account, the Xactus report listed three collection accounts. [*Id.* at 4.] For his September 2023 application, Flanagan obtained a September 25, 2023, tri-merge report from Partners Credit & Verification Solutions. [DE 148-37.] The Partners report listed Huizar's credit scores from Equifax as 543, from Experian as 549, and from TransUnion as 558. [*Id.* at 2.] The Partners report no longer listed Huizar's Horizon account but contained several "derogatory" accounts listed in collection, with missed payment history, and as charged-off. [*Id.* at 5–7.] The Parties provide no date or denial letter for the denial of Huizar's March 2022 Panorama application, but Flanagan sent Huizar a letter on October 17, 2023, that denied his Flanagan application. [DE 148-39.] In response, Huizar points to an April 18, 2021, Xactus report in connection with a third application for a conventional mortgage. That report again showed several delinquent accounts (including the Horizon bank account) and listed the following credit scores: 622 from Equifax, 619 from TransUnion, and 599 from Experian. [DE 143-32 at 2.]

This duel of tri-merge reports indicates a factual dispute as to causation. Equifax does not deny that Huizar was denied a conventional mortgage in April 2021 nor does it argue that subsequent adjustment to the Horizon tradeline sometimes increased his credit scores, including for Equifax. Instead, Equifax raises an interesting point that its

credit scores on the April 2021 and March 2022 tri-merge reports were already above 620. It follows, Equifax argues, that any subsequent increase in Equifax's credit scores would not have changed the outcome of the mortgage applications because Equifax was the highest of his credit scores. The middle scores used, which were below 620 and therefore resulted in the denial of his applications, were non-Equifax score. Equifax's argument, however, does not hold true for Huizar's 543 Equifax score on the September 2023 report. And while it's true that several delinquent accounts existed on Huizar's tri-merge reports, the impact of the Horizon tradeline cannot be written off as undisputably a non-factor. It will be up to Huizar to present evidence that ties the denial of his mortgage applications to Equifax's credit score reporting specifically.

I next turn to Huizar's allegation of pecuniary damages in the cost of mailing his dispute letters to Equifax. District courts across the country have adopted the holding in *Casella v. Equifax Credit Info. Servs.* that expenses incurred solely to notify consumer reporting agencies of errors in a consumer report, rather than to "force their compliance with any specific provision of the [FCRA], cannot be compensable as 'actual damages' for a violation of the FCRA." 56 F.3d 469, 474 (2d Cir. 1995); *Moran v. Screening Pros, LLC*, No. 12-cv-05808, 2020 WL 4724307, at *9 (C.D. Cal. July 30, 2020). Frustratingly, Huizar fails to respond to this argument. Unlike those cases, however, Huizar's dispute letters cite the FCRA and cannot be said to have been sent solely to notify Equifax of alleged errors. Huizar sent eight dispute letters to Equifax, and certain of those dispute letters cited provisions of the FCRA and explicitly called for Equifax to take action. [DE 148-16 at 4; DE 148-19 at 2–6.] The Court concludes that questions of fact exist as to who

paid for the mailing of Huizar's dispute letters and whether those costs were incurred to "force" Equifax's compliance with the FCRA or for notification purposes only.

Finally, I turn to Huizar's allegations of non-pecuniary damages. Equifax is correct that "when the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements." *Sarver*, 390 F.3d at 971 (citation omitted). Equifax's primary argument is that Huizar's alleged emotional damages were tied to his inability to qualify for a mortgage, which it says he cannot tie to Equifax's actions. But as I've noted above, this is a disputed. And unlike the plaintiff in *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, Huizar has done more than present conclusory statements of emotional distress. 422 F.3d 603 (7th Cir. 2005). There, the plaintiff's summary judgment response failed to explain her own injury instead saying the CRA's actions were "inherently degrading." *Id.* at 610. Here, Huizar provided detailed deposition testimony regarding the stress Equifax's allegedly inaccurate reporting caused him, the anxiety medication he takes, and the embarrassment he has suffered from not being able to purchase a home like his peers and co-workers. [DE 160 at 15–17.] The Court finds Huizar's testimony provides sufficient detail to survive summary judgment.

Huizar has likewise produced sufficient evidence to sustain his claim of a willful violation of the FCRA. As discussed above, the reasonableness of Equifax's reliance on the ACDV process and its continued reliance on Horizon's reporting in the face of court orders that raised questions as to whether Huizar currently owed a balance on the Horizon account is an issue of fact that must be decided by the jury. District courts

35

across the country have rejected summary judgment in favor of CRAs on allegations of willful violations of the FCRA where the CRAs continued to rely on information from a furnisher when the consumer raised issues with the accuracy of that information. *See Grigoryan v. Experian Info. Sols., Inc.*, 84 F.Supp.3d 1044, 1091–93 (C.D. Cal. 2014). A jury must first decide whether Equifax's procedures to ensure maximum possible accuracy and reinvestigations were reasonable, and, if not, whether they were undertaken with reckless disregard of the FCRA's requirements.

* * *

The record before me illustrates that there are genuine issues of material fact that should be presented to a jury at trial. Factual questions which remain are: (1) Whether Equifax's reporting of the Horizon tradeline in Huizar's file contained inaccurate information, (2) Whether Equifax failed to conduct a reasonable reinvestigation by failing to consider the Tippecanoe Circuit Court Order and using the ACDV process for each of Huizar's disputes, (3) Whether Equifax has in place reasonable procedures to assure maximum possible accuracy, (4) Whether Huizar has suffered actual damages, and (5) Whether Equifax willfully violated the FCRA. As such, a grant of summary judgment in either direction is not appropriate, and this case should proceed to trial.

## Conclusion

Accordingly, Plaintiff Fabian Huizar's Motion for Partial Summary Judgment [DE 143] is **DENIED**. Defendant Equifax Information Services LLC's Motion for Summary Judgment [DE 147] is also **DENIED**.

**SO ORDERED**.

36

ENTERED: November 14, 2025.

/s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE